COMMONWEALTH *vs.* JACOB COTTON.

Norfolk.    November 24. — January 7, 1885.

At the trial of an indictment for keeping intoxicating liquors with intent to sell the same unlawfully, it appeared that the defendant was found in a certain town, in which he had no license to sell intoxicating liquors, with a horse and wagon; that the wagon contained liquors, some of which were intoxicating and some not. *Held,* that evidence tending to show sales of intoxicating liquors in that town from the same wagon by the defendant, three and four months before the occasion in question, was admissible.

At the trial of an indictment for keeping intoxicating liquors with intent to sell the same unlawfully in Q., it appeared that the defendant was employed to drive a delivery wagon by a firm who kept for sale certain intoxicating liquors and certain liquors not intoxicating; that the firm was licensed to sell the intoxicating liquors in B., but not in Q.; that the defendant, upon the occasion in question, was on the usual route for the wagon driven by him, which was through a part of B., where his employers had customers for the intoxicating liquors, through Q., where there were customers for the non-intoxicating liquors, returning through another part of B., where there were customers for the intoxicating liquors. The defendant offered to prove that he was instructed by his employers to drive over the route and to supply their customers in B. with the intoxicating liquors, and their customers in Q. with the non-intoxicating liquors, and not to sell any intoxicating liquors in Q. The judge excluded this evidence. *Held,* that the evidence should have been admitted.

At the trial of an indictment for keeping intoxicating liquors with intent to sell the same unlawfully, if the defendant is employed to deliver liquors, both intoxicating and not intoxicating, to customers of his employer on a certain route, upon proof that he delivered two or three bottles of intoxicating liquors to a customer buying non-intoxicating liquors, in a town where his employer was not licensed to sell intoxicating liquors, he may show that he was authorized by his employer to give occasionally to any customer on his route a few bottles of such liquors.

INDICTMENT alleging that the defendant, on November 22, 1883, at Quincy, kept intoxicating liquors with intent to sell the same unlawfully in this Commonwealth. At the trial in the Superior Court, before *Mason,* J., the jury returned a verdict of guilty; and the defendant alleged exceptions, which appear in the opinion.

*R. Lund & J. L. Eldridge,* for the defendant.

*H. N. Shepard,* Assistant Attorney General, for the Commonwealth.

W. ALLEN, J. The defendant was found on a certain day in charge of a horse and wagon in the town of Quincy. The wagon contained a quantity of ale, lager beer, and porter, which were intoxicating liquors, and hop beer, ginger ale, and a liquor called "tonic," all of which were not intoxicating. He was thereupon charged with keeping intoxicating liquors with intent to sell the same unlawfully.

There was evidence that the horse, and the wagon and its contents, belonged to a firm in Boston, who employed the defendant to deliver the contents of the wagon to their customers. Exception was taken by the defendant to the admission of evidence tending to show sales of lager beer and porter in the town of Quincy from the delivery wagon of the firm by the defendant, while he was in charge of such wagon as driver, three and four months before the occasion in question. The circumstances of the different transactions are so similar, that actual sales of intoxicating liquors from the wagon in Quincy upon the former occasions have some tendency to show an intention to sell them upon the latter occasion. The lapse of time is a circumstance which affects the weight of the evidence, and, in some cases, might require its exclusion. In this case, it does not appear that the judge erred in admitting it.

It appeared that the defendant's employers kept ale, lager beer, and porter for sale, and also hop beer, ginger ale, soda, and mineral waters; that they were licensed to sell ale, lager beer, and porter in Boston, but were not licensed to sell them in Quincy or in Milton; that the defendant, on the occasion in question, was upon the usual route for the wagon driven by him, which was through a part of Boston, where his employers had customers for the intoxicating liquors which they were licensed

to sell, through Quincy and Milton, in which places there were customers for the non-intoxicating liquors, returning through another part of Boston, where there were customers' for the intoxicating liquors. The defendant offered to prove that his instructions from his employers were to drive over the route, and to supply their customers in Boston with the intoxicating liquors, and their customers in Quincy and Milton with the non-intoxicating liquors, and not to sell any intoxicating liquors in Quincy or Milton. The presiding judge excluded this evidence. We think that the evidence should have been admitted. The defendant had property belonging to his employers in his possession as their agent, and was passing through Quincy under orders from them relating to the property. The question in dispute was the purpose with which he had the property there, — whether to leave it in Quincy or to carry it beyond; and upon that question the instructions under which he received the property were competent, and it was immaterial whether the instructions were originally given when the property was delivered to him, or whether the property was delivered under standing orders in force at the time. The evidence was competent to show the purpose for which the property was received by him, as bearing on the question whether his purpose was to leave it in Quincy or to carry it beyond that place. *Commonwealth* v. *O'Connor*, 11 Gray, 94. *Commonwealth* v. *Austin*, 97 Mass. 595.

If a barrel of flour were found in a wagon in Quincy, and it was to be proved that the driver of the wagon intended to sell the flour there, and the only other evidence was that he had twice before sold flour from the wagon in that town, evidence that he had been employed by a dealer to take the flour through Quincy on his way to a customer in Milton would be competent. The difference between the case supposed and the case at bar affects the weight, and not the competency, of the evidence.

Evidence of one of the sales, upon which the Commonwealth relied for proof that the intoxicating liquors were kept for sale contrary to law, was the testimony of a witness that the defendant delivered in Quincy to one McGovern a case of hop beer and received the price therefor, and at the same time delivered to McGovern two or three bottles of porter and ale. The

defendant offered to show that he was authorized by his employers to give a few bottles of ale or porter occasionally to any customer on his route; and excepted to the exclusion of this evidence.

It is no defence for an agent charged with making an illegal sale, that the sale was prohibited by his principal; and, in general, evidence that certain sales by an agent were forbidden by his principal would not be competent to show that such sales were not made. In *Commonwealth* v. *Tinkham*, 14 Gray, 12, the court say: "The fact that the defendant's employer had given him orders to sell no liquors was entirely immaterial upon the trial of an indictment against the clerk, where there was direct evidence of such sales." But the question in the case at bar is peculiar. There was direct evidence of the delivery only of the liquors. The proof of the sale lay solely in the presumption arising from the delivery. The statute makes this *prima facie* evidence of a sale, extending somewhat the common law principle. To meet this presumption, in the case of a delivery of the goods of a principal by his agent, it is proper to allow the agent to show that he had authority from his principal to give them away. Evidence that goods were delivered under an express order of the employer to deliver them as a gift, would clearly be competent; and we think that, when goods of his principal are delivered by an agent in the course of his employment, and a sale by the agent is sought to be inferred from the mere delivery, the fact that he was authorized by his employer to deliver them as a gift, and not upon a sale, is a circumstance attending the delivery, and affecting the presumption which arises from it, whether the presumption arises from the circumstances of the delivery or by force of the statute.

*Exceptions sustained.*