## COMMONWEALTH vs. JOHN NEYLON.

Worcester.    October 2, 1893. — October 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Intoxicating Liquors — Unlawful Keeping for Sale — Evidence.*

At the trial of an indictment for unlawfully keeping for sale intoxicating liquors, it appeared that the record title to the premises in question, which consisted of a dwelling-house, a barn, and a building used as a pool-room, was in the defendant's children; and that one of his sons paid the United States internal revenue tax on the business of retail liquor dealer on the premises. There was evidence tending to show that the defendant had the responsible charge of the premises; that he lived there, and had given directions that the real estate should be taxed to him; and that he told officers who came to search the premises during the time named in the indictment that he had a trap which would hold a thousand gallons of liquor, but they could not find it. The government was allowed to introduce evidence that, twenty-two days after the latest date specified in the indictment, officers found a bottle of whiskey in the house on the premises; and that, more than two months later than that date, they found a trap in the barn which concealed a room where there were a large number of empty bottles and a pump smelling of whiskey. *Held,* that the defendant had no ground of exception.

At the trial of an indictment for unlawfully keeping for sale intoxicating liquors, the government called as a witness A., who was a bookkeeper for B., a wholesale liquor dealer, who had a place of business in W., where books were kept and bills paid, and he was shown a bill of parcels made out to the defendant and not receipted; and he was allowed to testify that he made out the bill and supposed he mailed it to the defendant; that since a certain day, two months prior to the date of the bill, the defendant had been in B.'s place of business in W. perhaps five times; and that he had never had any talk nor overheard any talk by him about the bill. The government also called as a witness C., who was allowed to testify that he was upon the premises occupied by the defendant twenty-two days after the latest date named in the indictment, and found blowing about the yard several pieces of paper, which he gathered, pasted together, and produced the bill of parcels shown to the witness A. The bill itself was then admitted in evidence. *Held,* that the defendant had no ground of exception.

INDICTMENT, for unlawfully exposing and keeping for sale intoxicating liquors at Leicester, on July 18, and on divers other days and times between that day and August 8, 1892. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that the defendant lived

on a small place in Leicester on which were a dwelling-house, a barn, and a building the first floor of which was used as a pool-room, and the upper part finished in sleeping-rooms; that officers were at the place four times between the dates alleged in the indictment; that on the first time, July 28, they saw several sales of intoxicating liquor made by one John F. Neylon, a son of the defendant, who lived on the premises; that he appeared to be the only one having charge of the premises, although the defendant was there a short time before the sales; that they watched the place about two hours and did not see the defendant; that on the following night they watched the pool-room again for an hour and a half, and saw several men come in, and saw John F. Neylon in charge, and dispensing liquors, but they did not see the defendant during this time; that on the same night some of the officers entered the pool-room, when a struggle occurred, during which the defendant ran in from the outside partially dressed, and took part; that the officers were there again that night, and saw the defendant in the pool-room and three other men drinking lager beer; that on August 3 they were again at the place, and saw the defendant sitting in the yard in a wagon; that he said they could search but would not find anything, that he had a trap which would hold a thousand gallons of liquor, but they could not find it; that the premises were searched, and in the barn were found some bottles which smelled of liquor, and a whiskey glass and a rubber hose which smelled of whiskey; that on August 4 they again searched the premises, did not see the defendant there, and did not find anything additional to what was there the day before; and that at no time were any seizures of liquor made, although a search was made at each visit except the first. The defendant introduced in evidence a deed of the premises in question to John F. Neylon and five others, children of the defendant. An assessor of Leicester testified that about May 15, 1892, the defendant told him to tax the real estate above referred to to him. There was also evidence that John F. Neylon had paid the United States internal revenue tax on this business of retail liquor dealer on the premises in question. There was also introduced in evidence the record of the defendant's acquittal upon an indictment charging him with keeping intoxicating liquors with intent to sell the same con-

trary to law, between June 1 and July 16, 1892, and of his acquittal upon a complaint charging him with having committed the same offence on July 17, 1892.

The government offered to show that officers visited the premises on August 30, 1892; that the defendant was not there; that in the house was found a bottle of whiskey, and another bottle that was broken; that they visited the premises again on October 19, 1892, and found a trap in the barn operated by a string, which, upon being pulled, removed a board which disclosed a room about seven or eight feet square which contained no liquor, but contained a pump smelling strongly of whiskey and a large number of empty bottles; and that the defendant was not there.

The defendant objected to all this evidence, but the judge admitted it only as tending to show the intent with which liquor was kept between July 18 and August 8; and the defendant excepted.

The government called as a witness one Garvey, a bookkeeper for E. S. Pierce and Company, wholesale liquor dealers, who had a place of business in Worcester where books were kept and bills paid, and he was shown a bill of parcels made out to the defendant, dated July 1, 1892, and not receipted. He testified that no liquor was sold at the Worcester office of the firm; that all liquors were sold and delivered from its place of business in Woonsocket, Rhode Island; that he had never received orders for liquor from the defendant, and knew nothing about any deliveries of liquor made by the firm for which he worked to the defendant or any other person; that he made out the bill of parcels and supposed he mailed it to the defendant at Cherry Valley, which he knew was the defendant's post office address; that he made out about a thousand each month, and he supposed he made out this one; that he had sent similar statements to the defendant; that since May 1, 1892, the defendant had been in Pierce's place of business in Worcester, perhaps five times; and that he had never had any talk nor overheard any talk by him about the bill.

All the above testimony from Garvey was admitted, against the defendant's objection, who excepted to its admission.

The government called one Bacon as a witness, who testified that he was upon the premises in question on August 30, 1892;

that he found blowing about the yard several pieces of paper which he gathered, pasted together, and produced the bill of parcels shown to the witness Garvey. The testimony of Bacon was admitted, against the objection and exception of the defendant. The bill of parcels itself was then admitted in evidence, against the defendant's objection and exception. It consisted of the fragments found on the premises as before stated by the witness Bacon, and by him pasted together.

The judge gave full and careful instructions in regard to said evidence, to which no exception was taken.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

The case was argued at the bar in October, 1893, and afterwards was submitted on the briefs to all the judges.

*F. P. Goulding,* for the defendant.

*F. A. Gaskill,* District Attorney, for the plaintiff.

ALLEN, J. Though the record title to the premises was not in the defendant, but in his six children, and though one of the defendant's sons paid the United States internal revenue tax on the business of retail liquor dealer on the premises, there was other evidence tending to show that the defendant had the responsible charge of the premises, and that he lived there and had given directions that the real estate should be taxed to him. There was also some evidence tending to show that he kept intoxicating liquors there with intent to sell the same within the time specified in the indictment; especially the evidence of a declaration by him to searching officers, that he had a trap which would hold a thousand gallons of liquor, but they could not find it. The evidence of finding whiskey in the house on August 30, which was twenty-two days after the latest date specified in the indictment, was not too remote in point of time. to be competent. *Commonwealth* v. *Finnerty,* 148 Mass. 162. *Commonwealth* v. *Hurley,* 158 Mass. 159. *Commonwealth* v. *Cotton,* 138 Mass. 500. *Commonwealth* v. *Kelley,* 116 Mass. 341. It would be open to argument whether the evidence pointed to a keeping of the whiskey by the defendant rather than by his son, but upon this point no doubt the instructions of the presiding justice were full and distinct. We are not informed in what part of the house the bottle of whiskey was found, but the jury

may have been. The evidence of finding a trap in the barn on October 19, though somewhat remote in point of time, was significant in view of the evidence of the defendant's declaration that he had a concealed trap which would hold a large quantity of liquor. The jury might infer that the trap found was the same one referred to by the defendant on August 3, as a trap which he then had ; and that on August 3 he had liquors concealed therein which he intended to sell.

The evidence as to the bill of parcels was sufficient to warrant a finding that it had been received by the defendant. This alone might have no tendency to incriminate him, but the witness Garvey, who had made out the bill of parcels, and probably sent it to the defendant, testified that since May 1, 1892, the defendant had been in Pierce's place of business in Worcester perhaps five times, and that he (the witness) had never had any talk with the defendant nor overheard any talk by the defendant about the bill. If any one of these visits to Pierce's place of business was after the reception of the bill, — and this was not disputed at the argument, — the defendant's omission to speak of the bill would have some tendency to show an assent to its correctness. It must now be assumed that the charge to the jury, which contained " full and careful instruction in regard to said evidence," included all proper cautions not to draw any inference against the defendant from the existence of the bill unless they should find that he, by his silence after receiving it under circumstances when naturally he would have spoken, acknowledged by implication that the liquors therein mentioned had been bought by himself; and in the opinion of a majority of the court no exception can be maintained to the admission of the evidence.

*Exceptions overruled.*