RICHARD REYNOLDS, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1.  Under the rule that indirect, collateral or circumstantial evidence is admissible when it tends to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth, it is proper in a prosecution for illegally selling liquor, to admit in evidence jugs which smelled as if they had had whiskey in them, found at defendant's place of business when he was arrested under the charge. Upon the same principle, papers acknowledging the receipt of orders for whiskey, and a letter offering commissions on sales of liquor, found at his place of business a few days after his arrest, are admissible in evidence, their probative force and effect to be determined by the jury in connection with other evidence.

2.  In a prosecution for illegally selling liquors, where there is evidence that the defendant was acting for the purchaser and also evidence of the delivery of liquor and the receipt of money therefor by the defendant from the purchaser, in the county and on the day alleged in the information, it is for the jury to determine whether

or not it was a sale, under proper instructions from the court.

This case was decided by Division A.

Writ of error to the Circuit Court for Bradford County.

### STATEMENT.

The plaintiff in error was convicted in the Circuit Court for Bradford county upon an information under Chapter 4930 acts of 1901, charging him with selling liquor in said county on or about August 26th, 1905, after an election had been held in the county forbidding the sale of liquor therein.

At the trial Emma Milton for the State testified that she knew Richard Reynolds; that she went to his restaurant in Bradford county, Florida, with Willie Pournell about nine o'clock on Saturday night August 26th, and got ten cents worth of whiskey from him; that she went up to where Richard Reynolds was standing behind the counter and told him she wanted some whiskey; that she put fifteen cents down on the counter and he picked it up, but gave her back five cents; that he poured some liquor in a half pint bottle, about half full (the bottle was identified by the witness with the same amount of the whiskey in it); that she had gotten liquor before that from him; that about 6 o'clock Thursday afternoon previous she got a quart of whiskey from him; that on Thursday morning she sent seventy-five cents to Richard Reynolds by Alva Leonard to get a quart of whiskey, but he did not have it and she did not get it until after the four-forty train came in that afternoon from Jacksonville; that he sent her word it would be there on the afternoon train from Jack-

sonville, so in the afternoon after that train had come she went down there, and he said that it had come and gave her a quart of whiskey in a bottle (identified). On cross-examination this witness testified that nobody except Lewis Sheely who works in the restaurant for Richard Reynolds was at the restaurant on the Thursday night, but on Saturday night Will Pournell, who went with her, and Lewis Sheely were there; that she had never been to Richard Reynold's restaurant before that Thursday afternoon and did not know him before that; that she had no previous conversation with him in regard to ordering any whiskey from Jacksonville for her; that she did not go down to his place on the Monday before and make arrangements with him to order her some whiskey from Jacksonville; that she never spoke to him in her life before she went down there that Thursday night; that she did not say to Dunk Mack that she had gotten Richard Reynolds to order a quart of whiskey for her from Jacksonville; that she did not have any conversation with Margarite Mack Sunday morning August 27th, in which she offered her five dollars if she would swear that she was present and saw Richard Reynolds sell her some whiskey; that she was not with Margarite Mack that Sunday morning.

Will Pournell corroborated the testimony of the previous witness except in testifying that Emma Milton asked Richard Reynolds "to give her fifteen cents worth of whiskey and he said that he could not do it I did see him give her a bottle like that about half full of whiskey." On cross he testified "I did not see her give him any money. I could have seen it if she had done so. Lewis Sheely and myself both were there and both of us saw them all the time." The testimony of this witness was cor

roborated by Lewis Sheely, a witness for the defendant.

J. P. Bennett testified that he is sheriff of the county; that he arrested Richard Reynolds on Monday morning after the Saturday, August 26th, on a warrant charging him with selling liquor; that he "found under the counter stowed away with a lot of rubbish over them a lot of jugs;  *   *   *   they were empty, but I smelled them and they smelled as if they had had whiskey in them. I think that in two or three of them I found several drops of whiskey in them." Seven jugs identified by this witness were offered in evidence, but defendant objected to such introduction because (1) "said evidence was irrelevant and immaterial; (2) the jugs were empty, some of them contained a few drops of whiskey, and not in such quantity as to be prima facie evidence of the defendant's guilt; (3) there was no evidence as to when this defendant received said jugs containing any liquor, if he did so, and that their introduction would prejudice the interest of the defendant upon this trial." The objections were overruled and the jugs were admitted in evidence, the defendant noting an exception.

Lacey Austin testified that he went to Richard Reynolds' place of business, a restaurant, a few days after he was arrested and a boy named Sheely who worked for Reynolds was there; that he saw a trunk in the restaurant and looking into it found "a lot of receipts for orders in Richard Reynolds' name;" also a letter addressed to Richard Reynolds and signed by Chas. Blum. The letter is as follows:

"Chas. Blum & Co.,
Wholesale Dealers in Pabst
Brewing Co.'s Milwaukee Lager Beer

Jacksonville, Fla., 8-9, 1905.

Mr. R. H. Reynolds,

Dear Sir: We will allow you 10 per cent. on all jug orders cash with order, 5 per cent. on case goods. Money must be with order.

Resp.            Chas. Blum."

The "receipts for orders" offered as evidence were letters addressed to Richard Reynolds from Chas. Blum & Co., acknowledging receipt of remittances for liquor on August 11th, 12th, 14th, 16th, 18th, 19th, 21st, 24th, and 26th, 1905.

The defendant objected to the introduction of the letter in evidence because (1) "It purported to be a letter written by Chas. Blum to this defendant making a proposition to him, of which there was no evidence of any acquiescence in by defendant; that it in no way committed him, nor was it shown to have come into his possession by due course of mail or otherwise, nor was it shown to have been written by Chas. Blum; (2) it is irrelevant and immaterial and in no sense pertinent to the issue joined, but only tended to prejudice the interest of the defendant." The objection was overruled, the letter was admitted in evidence and the defendant noted an exception.

The defendant objected to the introduction of the "receipts for orders" in evidence because (1) "said papers were printed circulars with the name of the alleged sender printed and not written, were not original letters, and there was no evidence showing that they were ever received by mail or otherwise from Chas. Blum & Co., or that Chas. Blum & Co. had ever sent any such papers to the defendant; (2) they are irrelevant and immaterial inasmuch as they do not show or tend to show the defend-

ant's guilt." The objections were overruled, the "recepits for orders" were admitted in evidence and the defendant noted an exception.

Alva Leonard, a witness for the defendant, testified that on Thursday before August 26th, Emma Milton asked him to take seventy-five cents to Reynolds; that he "took it down to Richard Reynolds' restaurant and gave him the seventy-five cents that Emma Milton had sent to him for him to order some medicine for her from Jacksonville. He took the money."

Dunk Mack, a witness for the defendant, testified that Emma Milton told him that she had a quart of whiskey "that she had gotten Mr. Reynolds to order it for her from Jacksonville."

Margarite Mack for the defendant testified that Emma Milton offered her five dollars to swear she saw Richard Reynolds sell Emma some whiskey.

Hans Austin for the defense testified that he had received from Chas. Blum a letter similar to the one in evidence about the same date, and that he had not sold any liquor, though he was in the liquor business some years ago.

The defendant in his own behalf testified that Emma Milton came to his restaurant on Monday before the Thursday he "ordered some liquor for her," that she asked where she could get some liquor and he replied that he did not know unless she ordered it from Jacksonville as he did every other day and sometimes every day; that she said she would get him to order a quart for her; that on Tuesday morning Alva Leonard came to his restaurant and gave him seventy-five cents and stated that Emma Milton had sent it to order that medicine for her from Jacksonville; that as he was going to order by that morn-

ing's mail three quarts for himself and two other persons he ordered an additional quart for Emma Milton, making the order for one gallon to save express charges; that the gallon came on the afternoon train; that about six o'clock that afternoon Emma Milton came to his restaurant and he poured a quart out of a jug and gave it to her and offered her ten cents in change, the cost of the quart being sixty-five cents; that she requested him to keep the ten cents and put that much in for her in his order on Saturday; that he included it in his Saturday's order and on Saturday night he poured in a bottle what he could judge was ten cents worth, that she asked him to put fifteen cents worth more in the bottle for her, but he said he could not do that and did not do it; that he frequently joins with friends in ordering whiskey, but that he has never sold any; that he has no contract with Chas. Blum or Chas. Blum & Co., and has received no commissions of any character from them; that he sometimes orders from them and sometimes from other people; that he had no interest in the money Emma gave him nor in the liquor he ordered for her.

Emma Milton being recalled testified that she did not say to Margarite Mack that she would give her five dollars to swear that she had seen Richard Reynolds sell her some whiskey.

The charge of the court was as follows: "The court charges you that the statutes of the State of Florida prohibit the selling of liquors in a county which has voted against the sale of liquors, but there is no law making the purchase of liquors, either for one's self or for another, a criminal offense. If in this case, you find from the evidence that this defendant received from the State's witness, Emma Milton, a sum of money, with the request

that he purchase for her liquor, and the defendant took her money and acted for her as her agent, and ordered the liquor for her, at her request, and said defendant had no interest in the liquor or money, then and in that event the defendant would not be guilty and you would be authorized to find a verdict of not guilty."

A motion for a new trial was denied and an exception taken.

On writ of error to the present term of this court the following errors are assigned:

"First. That the verdict of the jury is contrary to law.

Second. That the verdict of the jury is contrary to the evidence.

Third. That the said judge of said court erred in admitting as evidence in said cause, over defendant's objection, certain empty jugs found in the store-room of the defendant.

Fourth. That the said judge erred in admitting as evidence in said cause, over defendant's objection, certain printed receipts for orders of whiskey directed to the defendant and signed by Chas. Blum and Co., dated August 11th, 12th, 14th, 16th, 18th, 19th, 21st, 24th and 26th, 1905, respectively.

Fifth. That the said judge of said court erred in admitting as evidence in said cause, over defendant's objection, one certain letter bearing date August 9th, 1905, and directed to the defendant R. H. Reynolds, and signed by Chas. Blum, offering 10 per cent. on all jug orders, cash with orders, 5 per cent on case goods, money sent with all orders."

*C. C. Thomas,* for Plaintiff in Error;

*W. H. Ellis,* Attorney-General, for the State.

WHITFIELD, J. (*after stating the facts*) : The plaintiff in error in support of the third, fourth and fifth assignments of error contends that the jugs, the "receipts for orders of whiskey" and the letter of August 19th, 1905, to R. H. Reynolds offering him a commission on jug orders, admitted in evidence over his objections were irrelevant and immaterial and tended to prejudice the case of the defendant, because, as to the jugs they were empty and there was no evidence when they were received by the defendant, or that they contained liquor when they were received by him, because as to the "receipts for orders of whiskey," which were printed and not original letters, there was no evidence that they were ever received by defendant through the mail or otherwise, and because as to the letter no acquiescence in the offer by defendant was shown, nor even that it was received by defendant through the mails or otherwise from Chas. Blum & Co.

As was said by the court in the case of Mobley v. State, 41 Fla. 621, 26 South. Rep. 732, "the rule with reference to the admissibility of indirect, collateral or circumstantial evidence is that 'great latitude is to be allowed in the reception of indirect, or circumstantial evidence. It includes all evidence of an indirect nature, whether the inferences afforded by it be drawn from prior experience, or be a deduction of reason from the circumstances of the particular case, or of reason aided by experience. The competency of a collateral fact to be used as the basis of legitimate argument, is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth.'

27—S. C.

Stevenson v. Stewart, 11 Pa. St., 307; Kernan v. State, 65 Md. 253, 4 Atl. Rep. 124; Bolling v. State, 54 Ark. 588, 16 S. W. Rep. 658; State v. Rider, 95 Mo. 474, 8 S. W. Rep. 723." Under this rule the jugs were admissible in evidence since it was shown in evidence that they were found in the defendant's place of business at the time defendant was arrested for selling liquor, that they smelled as if they had had whiskey in them, and that in two or three of the jugs several drops of whiskey were found. The "receipts for orders for whiskey" and the letter were shown to have been found in a trunk in the defendant's place of business a few days after his arrest, and there was evidence that the defendant received whiskey from Jacksonville on August 24th, the date of one of the "receipts." The charge being the illegal sale of liquor, the letter and the "receipts for orders of whiskey" tended to show the frequent purchase of liquor by the defendant and were admissible. Their probative force and effect would of course be determined by the jury in connection with other evidence. See Commonwealth v. Neylon, 159 Mass. 541, 34 N. E. Rep. 1078; Commonwealth v. Martin, 162 Mass. 402, 38 N. E. Rep. 708; Commonwealth v. Finnerty, 148 Mass. 162, 19 N. E. Rep. 215.

Even if the evidence objected to did not at first appear to be relevant, after the testimony of the defendant that he had ordered liquor from Jacksonville every other day and sometimes every day and that he sometimes ordered it from Chas. Blum & Co. and that he received it in jugs, there can be no question of the relevancy and materiality of the "receipts for orders" and the jugs as evidence when it is shown they were found at the defendant's place of business at the time or soon after his arrest. He did not deny receiving either the jugs or the "receipts for orders."

The letter from Chas. Blum of August 9th, 1905, was relevant in view of the order for liquor made by the defendant two days thereafter as shown by one of the "receipts for orders" dated August 11th. See Hinote v. Brigman, 44 Fla., 589, 33 South. Rep. 303.

Under the first and second assignments of error it is contended that the verdict is contrary to law and contrary to the evidence because it is urged that the evidence shows that the defendant acted only as the agent of the buyer and not as the agent of the seller, and that under the evidence and the charge of the court the verdict should have been an acquittal.

The defendant testified that he acted solely for the buyer in ordering and in delivering the liquor; that he had no interest in the money nor in the liquor he bought for and delivered to Emma Milton and that he received no commissions of any character from Chas. Blum & Co. The charge of the court given at the defendant's request, as set out in the statement, was entirely fair to the defendant; but as there was evidence of the delivery of liquor and the receipt of money therefor by the defendant in the county on Saturday the day alleged in the information, it was for the jury to determine from all the evidence whether the delivery of the whiskey and the receipt of money therefor by the defendant, which the statute makes prima facie evidence of the ownership of the liquor by the defendant, was or was not a sale by the defendant for himself or as agent for the seller. Hiers v. State, 52 Fla. 25, 41 South. Rep. 881; Goode v. State, 50 Fla. 45, 39 South. Rep. 461. As there was evidence to sustain the verdict, under a charge entirely favorable to the defendant, it cannot be

said here that the verdict is contrary to law and the evidence.

The judgment is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.