ISRAEL FISHER, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. In the trial of persons charged with selling liquors contrary to law, proof of the delivery of whiskey to a person by the defendant and the receipt of money therefor by him is *prima facie* evidence of the ownership of said whiskey by the de-

fendant, and casts upon him the burden of rebutting the legal presumption.

2. The evidence examined and found sufficient to support a verdict of guilty of the offense of engaging in and carrying on the business of a dealer in liquors in a county which had voted against the sale of said liquors.

This case was decided by Division B.

Writ of Error to the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*J. A. Edmondson,* for plaintiff in error;

*W. H. Ellis,* Attorney General, for the state.

PARKHILL, J.—The plaintiff in error was convicted of the offense of engaging in and carrying on the business of a dealer in liquors in the county of Leon, which said county had voted against the sale of said liquors. The only contention here is that the verdict is contrary to and unsupported by the evidence.

William M. Langston, a witness for the state, testified as follows: "During the month of December, 1906, I was chief of police of the city of Tallahassee. On the 14th day of such month, I was standing in front of the city market with Jackson Gray, who was then an officer of the police force of the city of Tallahassee, and I saw Ben Bryant go to the fish stall occupied by Israel Fisher and hand to Fisher a silver dollar. Afterwards Mr. Gray and myself saw Ben Bryant walk in the direction of the rear of the market building. Mr. Gray and myself then went up stairs in the city council chamber over the market where we have a view of the

rear of the stall occupied by Israel Fisher. We then saw Fisher go out of the back door to his stall and hand to Ben Bryant a package wrapped in a piece of paper, and place upon a barrel in the rear of the stall twenty-five cents in silver. Ben Bryant immediately took up the money from the barrel. We then came down stairs to the front of the market again and when we reached there we saw Ben Bryant deliver the package to a negro man who walked across the street and delivered it to a woman by the name of Julia Brown. Mr. Gray and myself then walked across the street and took the package from the possession of Julia Brown and found the same to be a pint of whiskey. Mr. Gray and myself then went into Israel Fisher's stall and found in his fish bin twenty-two pints of whiskey and twenty-five half pints of whiskey and we also found in the bottom of the bin numerous whiskey labels. We took possession of the whiskey and carried the same up to the Mayor's court room. All of this occurred in Leon county, state of Florida, on the 14th day of December, A. D. 1906. On the same day I returned to Israel Fisher the whiskey which I took possession of in his stall." Jackson Gray gave substantially the same testimony.

Ben Bryant testified for the state as follows: "During the second week in December, 1906, I met Julia Brown on the street near the market house in Tallahassee. She gave me a dollar and asked me to go over and get her a pint of whiskey from Israel Fisher. I went over to Fisher's stall and gave him the dollar and told him I wanted a pint of whiskey. I went round to the rear of Fisher's stall and he handed me a pint of whiskey wrapped up in a piece of paper and put twenty-five cents in change on top of a barrel in the rear of the stall. I took up the change from the top of the barrel. I then went back to the front of the market, handed the whiskey to a negro man from the country and requested

him to deliver it to Julia Brown in person. At the time I got the whiskey for Julia Brown from Fisher, I had not gotten from him all the whiskey which he had bought for me in Quincy. I had gotten two pints and after the trial in the Mayor's court I got the balance, but the whiskey I bought from Fisher for Julia Brown was not a part of the whiskey which Fisher had bought for me, but I paid seventy-five cents for the pint of whiskey which I bought for Julia Brown with the money Julia gave me, and I returned the change to Julia. All this occurred in Leon county, Florida, about December 14, 1906."

The defendant testified as follows: "My name is Israel Fisher and I have been engaged in the fish business in the city of Tallahassee for the past thirty years and I am now still engaged in the fish business in Tallahassee. During the month of December, 1906, and for sometime prior thereto I was engaged in the fish business in Quincy, Florida. It was my custom from the time I became engaged in the fish business in Quincy to go to Quincy from Tallahassee every Friday afternoon of each week for the purpose of looking after my fish business there. I usually returned to Tallahassee on the following Sunday afternoon. During the second week in December, 1906, Alfred Donalson, Hardy Croom, William Smith, Sawnee Moore and Thomas Nix each came to me at different times and different places and gave me three dollars and requested me to buy three dollars worth of whiskey for them the next time I went to Quincy, stating that they wanted to lay in a supply of whiskey for Christmas. I agreed to buy the whiskey for them as they were all old friends and regular fish customers of mine. On account of these parties being old friends and regular customers of mine I had frequently purchased whiskey for them at their request while in Quincy and never in any case charging

them anything for my services nor any profit on the whiskey. I simply acted in all these transactions as the agent of these parties. In buying whiskey for them I had always been accustomed to buy a brand of whiskey which costs fifty cents per pint. About the same time Ben Bryant, who also was an old friend and regular customer of mine came to me and requested me to purchase for him while in Quincy three dollars worth of whiskey, giving me two dollars and twenty-five cents requesting me to lend him the other seventy-five cents and he would pay me back when I returned from Quincy. As I had been accustomed to buy whiskey for Bryant while in Quincy, as he was an old friend and regular customer of mine, I agreed to buy the whiskey for him just as I did with the others and I merely acted as his agent, not making any charge for my services nor making any profit on the whiskey. About the same time Mr. G. W. Hale, the janitor at the court house came to me and requested me to buy for him a pint of whiskey of the same brand which I had been accustomed to purchase for him in Quincy at seventy-five cents per pint. He gave me seventy-five cents for such purpose. On Friday before the 14th day of December, I went to Quincy as usual and while there I purchased for Alfred Donalson, Hardy Croom, William Smith, Sawnee Moore and Thomas Nix and Ben Bryant each six pints of whiskey of the same brand I had been accustomed to purchase for them and paid therefor fifty cents per pint. I also purchased for Mr. Hale one-half pint of the same whiskey I had purchased for the others as I was unable to purchase for him the same brand I had been accustomed to purchase as Mr. Holley who was engaged in the liquor business in Quincy and from whom I was accustomed to purchase Mr. Hale's whiskey, was out of Mr. Hale's brand. I packed the whiskey in a suit case and sent it to Tallahassee by express. I returned

to Tallahassee on Sunday afternoon and after arriving I went to the express office and got the whiskey. I carried it round to my stall and while there I met Ben Bryant. He requested me to let him have two pints of whiskey which I had purchased for him, which I did. I put the balance of the whiskey in my fish bin. On Monday I did not go to my stall at the fish market at all as I never have any fish for sale on Monday and on that account never open up my stall for business. On Tuesday morning Ben Bryant came to my stall and asked me to let him have a pint of whiskey and handed me a dollar. As I still had four pints of whiskey which belonged to him, and as he owed me seventy-five cents still on account of the money which I loaned him to purchase his whiskey, I put a pint of whiskey which he asked me for and twenty-five cents in change on a barrel in the rear of my stall and Ben Bryant came around to the rear of my stall and got the whiskey and the money. Immediately afterwards the chief of police, Mr. Langston and Mr. Gray came to my stall and arrested me and took possession of all the whiskey in my fish bin. After my trial in the Mayor's court Mr. Langston returned to me the whiskey which he had taken from me. As Alfred Donalson, Hardy Croom, William Smith, Sawnee Moore, Thomas Nix and G. W. Hale were in the court room at the time of my trial in the Mayor's court I got them together after the trial and gave them the whiskey which I had purchased for them. I gave Alfred Donalson six pints of whiskey and he gave me ten cents which was his part of the express charges. I gave Hardy Croom six pints of whiskey and he gave me ten cents for his part of the express charges. I gave William Smith six pints of whiskey and he gave me ten cents for his part of the express charges. I gave Sawnee Moore six pints of whiskey and he gave me ten

cents for his part of the express charges. I gave Ben Bryant three pints of whiskey, which was the balance of the whiskey I purchased for him in Quincy and he paid me ten cents for his part of the express charges. I gave Thomas Nix six pints of whiskey which I purchased for him and he paid me ten cents for his part of the express charges. I also gave Mr. Hale the pint and one-half pint of whiskey which I bought for him. In purchasing whiskey for these parties I never made any charge for my services nor charged any profit on the whiskey which I purchased for them. In purchasing whiskey for them from time to time it had always been my custom after I had gotten the whiskey out of the express office at Tallahassee to put it in my fish bin and in this way the labels would come off the bottles and would be left in the bottom of the fish bin. The whiskey which I let Ben Bryant have on Tuesday morning was whiskey which belonged to him and I did not sell it to him. In purchasing whiskey for these parties I did so as they were all friends of mine and regular customers and I had known them for a long time."

Alfred Donalson, Hardy Croom, William Smith, Sawnee Moore, Thomas Nix and G. W. Hale corroborated the defendant so far as their dealings with him were concerned.

In construing section 3557 General Statutes of 1906, we have held that proof of the delivery of whiskey to a person by the defendant and the receipt of money therefor by him is *prima facie* evidence of the ownership of said whiskey by the defendant, and casts upon him the burden of rebutting the legal presumption. Goode v. State, 50 Fla. 45, 39 South. Rep. 461; Massey v. State, 50 Fla. 109, 39 South, Rep. 790.

The evidence established that the defendant delivered whiskey to Bryant and received seventy-five cents for it, thereby making out a *prima facic* case of the

ownership of the whiskey by the defendant, (and the defendant failed to rebut the legal presumption. It is true the defendant testified that the whiskey which he let Ben Bryant have on Tuesday morning was whiskey which belonged to him, and that he (the defendant) did not sell it to him. But Bryant testified that the whiskey he bought from the defendant for Julia Brown was not part of the whiskey which Fisher had bought for him, but he (Bryant) paid seventy-five cents for the pint of whiskey which he bought for Julia Brown with the money Julia gave him, and he returned the change to Julia.

. It is true the defendant said that after his trial in the Mayor's court he gave Ben Bryant three pints of whiskey, which was the balance of the whiskey purchased for Bryant in Quincy; but Bryant said, "At the time I got the whiskey for Julia Brown from Fisher I had not gotten from him all the whiskey which he had bought for me in Quincy. I had gotten two pints, and after the trial in the Mayor's court I got the balance, but the whiskey I bought from Fisher for Julia Brown was not a part of the whiskey which Fisher had bought for me."

So there was conflict in the evidence on this point, and there were suspicious circumstances, such as the delivery of the whiskey in a stealthy manner, and the large number of whiskey labels in defendant's fish bin. See Reynold v. State, 52 Fla. 409, 42 South. Rep. 373.

The jury accepted as true the testimony for the State, and we think it sufficient to support the verdict.

The judgment is affirmed.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.